UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAAD QADEER,

       *Plaintiff*,

v.

ANDREW SCHOFER, *et al.*,

       *Defendants*.

Civil Action No. 23-2268 (LLA)

**MEMORANDUM OPINION**

Saad Qadeer, a Pakistani national, seeks to compel Defendants—Andrew Schofer, in his official capacity as Deputy Chief of Mission for the U.S. Embassy in Pakistan, and Antony J. Blinken, in his official capacity as Secretary of State—to adjudicate his immigrant visa application. ECF No. 1. Mr. Qadeer contends that his application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). ECF No. 7. For the reasons explained below, the court will dismiss the case under Rule 12(b)(6).

**I.    Background**

The court draws the facts, accepted as true, from Mr. Qadeer's complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, provides for the temporary admission of nonimmigrant visa applicants into the United States "to perform

services . . . in a specialty occupation" through the H-1B visa program. 8 U.S.C. § 1101(a)(15)(H)(i)(b). The H-1B visa allows these specialized workers to work at a United States company for up to a three-year period with the ability to extend the visa to a maximum of six years. *See* U.S. Dep't of State, *H-1B Specialty Occupations, DOD Cooperative Research and Development Project Workers, and Fashion Models*.[1] An H-1B visa requires the applicant to complete numerous steps. *See id.* Applicants must receive both an approved labor certification and an approved visa petition from their employer and fill out various forms. *Id.* The applicant bears the burden of showing that they are eligible for the visa. 8 U.S.C. § 1361. Typically, an applicant for an H-1B visa must undergo an in-person interview with a consular officer. *Id.* § 1202(h). At the end of the interview, State Department regulations require that the consular officer either issue or refuse the visa. 22 C.F.R. § 41.121(a); *see Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024). However, if the consular officer determines that he needs further information, he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information*;[2] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

Mr. Qadeer applied for an H-1B visa in 2021 and his application was granted in February 2022. ECF No. 1 ¶¶ 2, 11. His visa expired in January 2023, prompting Mr. Qadeer's current renewal application. *Id.* ¶ 12. Mr. Qadeer left the United States and traveled to the U.S. Embassy in Pakistan for his visa interview in April 2023. *Id.* ¶ 13. After the interview, the consular officer

---

[1] *Available at* https://perma.cc/63T8-88PU.

[2] *Available at* https://perma.cc/44NK-RVZE.

informed Mr. Qadeer that his application had been placed in "administrative processing," where it has remained ever since. *Id.* ¶¶ 1, 14. Mr. Qadeer remains in Pakistan. *See id.* ¶¶ 1-2.

The delay in adjudication has caused Mr. Qadeer "significant personal, financial, and emotional hardships." *Id.* ¶ 2. Because his employer does not allow remote work, Mr. Qadeer has been forced to remain on unpaid leave since April 2023. *Id.* This has "result[ed] in a loss of income and work opportunities," including "compromis[ing] [his] prospects of becoming a permanent staff member." *Id.* During his extended stay in Pakistan, he has "fac[ed] financial hardship" and has paid approximately $2,000 per month in living expenses, diminishing his savings by at least $10,000 as of the time he filed his complaint. *Id.* ¶¶ 2-3.

In August 2023, Mr. Qadeer filed a two-count complaint against Deputy Chief Schofer and Secretary Blinken in their official capacities. ECF No 1. He seeks to compel the complete adjudication of his visa application within fifteen days of the court's decision as well as attorney's fees and costs. *Id.* at 7-8, Claims for Relief. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 7. The matter is fully briefed. ECF Nos. 7, 8, 11.

## II.   Legal Standard

Mr. Qadeer bears the burden of establishing subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in Mr. Qadeer's favor. *Id.*

### III. Discussion

Defendants raise myriad arguments for dismissal under Rule 12(b)(1) and (b)(6), including arguments about standing, nonreviewability, and failure to state a claim. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Hajizadeh v. Blinken*, No. 23-CV-1766, 2024 WL 3638336 (D.D.C. Aug. 2, 2024); *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222 (D.D.C. June 27, 2024); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1 (D.D.C. 2022); *Shen v. Pompeo*, No. 20-CV-1263, 2021 WL 1246025 (D.D.C. Mar. 24, 2021).

#### A. Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that Mr. Qadeer "must establish that [he has] standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the constitutional requirement for standing, Mr. Qadeer must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark*

4

*Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61). Defendants argue that Mr. Qadeer has not suffered an injury in fact, ECF No. 7, at 7-13; and that the alleged injury cannot be redressed by this court, *id.* at 5-6, 13-14. The court disagrees.

First, as to injury, Defendants contend that Mr. Qadeer's suit is based on a procedural injury that is not connected to any substantive harm, primarily because he does not have a right to enter the United States. *Id.* at 7-13. Courts in this district have consistently rejected this argument, concluding that a plaintiff suffers an injury in fact when an unreasonable delay in visa adjudication causes financial or other hardship. *See Ameer*, 2024 WL 2831464, at *3 (finding that a processing delay on an H-1B visa application resulting in forced unpaid leave and potential termination constituted an injury in fact); *see also, e.g.*, *Kahbasi*, 2024 WL 3202222, at *3; *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *3 (D.D.C. Feb. 12, 2024); *Khan v. Blome*, No. 22-CV-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). Here, Mr. Qadeer has suffered "significant personal, financial, and emotional hardships." ECF No. 1 ¶ 2. Specifically, he has been on unpaid leave from his job since April 2023, causing him to lose income, miss out on work opportunities, and drain his savings. *Id.* ¶¶ 2-3. Those are sufficiently concrete harms to make this "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019)).

Defendants next point to redressability, arguing that Secretary Blinken cannot provide the relief Mr. Qadeer is requesting. ECF No. 7, at 5-6. "To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007). Defendants correctly acknowledge that the INA "grants consular

5

officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). But Mr. Qadeer does not seek to have his visa adjudication revised; rather, he seeks to have the adjudication completed. ECF No. 1, at 7-8, Claims for Relief. As numerous courts in this district have acknowledged, decisions on the merits are distinct from decisions about timing. *Al-Gharawy*, 617 F. Supp. 3d at 10. "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'" *Id.* (quoting 5 U.S.C. § 555(b)). Because Secretary Blinken either does or could play a role in the pace of visa adjudications, an order from this court directing him to move more quickly would likely redress Mr. Qadeer's harms. *See Lujan*, 504 U.S. at 561. Accordingly, Mr. Qadeer has alleged the requisite connection between Secretary Blinken and his alleged injury.

Finally, Defendants contend that Mr. Qadeer's injuries are not redressable by this court because "Plaintiff pleads nothing in the Complaint that forcing another decision now would lead to a different result." ECF No. 7, at 13. Defendants again miss the mark. Mr. Qadeer seeks final processing of his visa application, which remains in "administrative processing." ECF No. 1 ¶ 1. An order by this court compelling adjudication of Mr. Qadeer's visa—not "re-adjudication," but rather completion of the process—would remedy Mr. Qadeer's injuries by freeing him from the interim "processing" stage.

### B. Consular Nonreviewability and Non-Discretionary Duty

Defendants next raise two non-standing threshold challenges: (1) that the doctrine of consular nonreviewability bars Mr. Qadeer's claims, ECF No. 7, at 14-18; and (2) that Mr. Qadeer fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 18-25. The court is unpersuaded.

First, Defendants argue that the doctrine of consular nonreviewability prevents this court from reaching the merits. *Id.* at 14-18. In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest.*, 985 F.3d at 1024. "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. Mr. Qadeer's visa application remains in administrative processing. ECF No. 1 ¶ 2. Thus, the doctrine does not apply.

Second, Defendants contend that Mr. Qadeer has failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA. ECF No. 7, at 18-19 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). Defendants argue that Mr. Qadeer cannot identify a non-discretionary duty to adjudicate his visa application. ECF No. 7, at 20-25. Several courts in this district have reached a contrary conclusion, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian*, 2024 WL 1076810, at *5; *see, e.g.*, *Hajizadeh*, 2024 WL 3638336, at *3; *Kahbasi*, 2024 WL 3202222, at *5, *Ameer*, 2024 WL 2831464, at *4; *Akrayi v. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023), *aff'd on other grounds*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). This court agrees

7

with the majority view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

### C.  Unreasonable Delay

On the merits, Defendants argue that Mr. Qadeer has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 7, at 25-33. Mr. Qadeer's claims under the APA and the Mandamus Act share the same standards for obtaining relief. *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")). Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Weighing the *TRAC* factors here, the court concludes that Mr. Qadeer has failed to state a claim on which relief can be granted.[3]

The first two factors—requiring agencies to follow "a rule of reason" related to their timelines, and the influence of a congressionally imposed timeline—are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). In essence, these two factors require the court to consider "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for the agency's delay.'" *Rostamnia*, 2024 WL 1328462, at *5. In analyzing these factors, the court may consider "the complexity of the task at hand." *See Da Costa*, 80 F.4th at 341 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Both factors favor Defendants.

As Mr. Qadeer acknowledges, neither the APA nor the Mandamus Act impose a statutory deadline. ECF No. 8, at 18. "Absent a congressionally supplied yardstick, courts typically turn to

---

[3] Mr. Qadeer suggests that the unreasonable-delay analysis is premature at the motion-to-dismiss stage. ECF No. 8, at 15-16. The court disagrees. It is the majority view in this district that "application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." *Bega v. Jaddou*, No. 22-CV-2171, 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), *aff'd sub nom. Da Costa*, 80 F.4th; *see, e.g.*, *Rostamnia v. Blinken*, No. 23-CV-1638, 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024) (applying the *TRAC* factors in an unreasonable-delay analysis at the motion-to-dismiss stage); *Rashidi v. Dep't of State*, No. 23-CV-1569, 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023) (same). Such is the case here.

case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has found a four-year delay not unreasonable. *Da Costa*, 80 F.4th at 342. The court is satisfied that Defendants utilize a rule of reason that does not constitute unreasonable delay. At the time he filed his complaint, Mr. Qadeer had waited less than five months since his interview with a consular officer and, by the time of decision, will have waited about fifteen months. *See* ECF No. 1 ¶ 13. Although such a timeline is undoubtedly frustrating, it does not constitute unreasonable delay when compared to relevant cases.

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors Defendants. *Da Costa*, 80 F.4th at 340 (quoting *TRAC*, 750 F.2d at 80). The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys*, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)). Such would be the case here, where moving Mr. Qadeer to the front of the visa-adjudication line would merely reorder all applicants with no change in the overall timeline. To be sure, the backlog in visa adjudication is troubling. ECF No. 1 ¶¶ 2-3. But compelling Defendants to process Mr. Qadeer's visa application presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021). In his opposition, Mr. Qadeer contends that he "should not be penalized for a lack of agency resources." ECF No. 8, at 20. However, "deference must be

given to the State Department's priority-setting and resource-allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71 (citing *Milligan*, 502 F. Supp. 3d at 319). It would be improper for the court to intervene and expedite Mr. Qadeer's application. The fourth factor thus heavily weighs in favor of Defendants.

The third and fifth factors concern the impacts of the delay on the visa applicant, with the third factor identifying "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses[ing] the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). These factors weigh slightly in Mr. Qadeer's favor. Mr. Qadeer has alleged real financial costs, including loss of income and work opportunities. ECF No. 1 ¶¶ 2-3. These harms are unfortunate. However, without more facts suggesting otherwise, these harms do not threaten Mr. Qadeer's physical health and well-being in a manner compelling enough to overcome Defendants' advantage on the more important factors. *See Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"); *Ahmadi*, 2024 WL 551542, at *6 (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Mr. Qadeer does not allege bad faith, so this factor is neutral. ECF No. 8, at 17.

\*     \*     \*

As the D.C. Circuit explained in *Da Costa*, the delays in visa adjudications are "troubling." 80 F.4th at 344. But after weighing the *TRAC* factors, the court concludes that Mr. Qadeer has not

plausibly alleged that the delay in his visa adjudication is unreasonable. Accordingly, the court will dismiss the complaint.

## IV. Conclusion

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 7. A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 15, 2024